Good morning, and may it please the Court, my name is Nimish Desai with the Leif Cabrazer Law Firm here on behalf of the petitioners, and I'd like to try to reserve three minutes for rebuttal, if I might. So petitioners in this case bring consumer protection and trespass violation claims against Respondent Turn, which secretly used so-called zombie cookies to circumvent privacy measures taken by mobile device users. We are here because the district court compelled petitioners to arbitration, despite there being no such agreement between Turn and the petitioners, under the doctrine of equitable estoppel. Now, the district court committed clear error in applying that doctrine, and this— Let me stop you for a second, Counsel, just so we get this straight on the record here. There is a difference on a writ between clear error and de novo review, right? Yes. Okay. And the best I can find of something that's comparable to this is the Douglas case from the Ninth Circuit. Agreed? Agreed. Okay. But in that case, and I think it was a per curiam decision, the court found that clear error was as if it was a radical violation of contractual principles of law that everybody should know. Here we've got—we've got law that can go both ways, so why—and is that your best case, or do you have a better case on what constitutes clear error on the issue here, which is whether or not arbitration should be, or the decision to force arbitration was an error, clear error? Right. So I don't think there are a lot of cases on clear error on McDanis petitions related to arbitration orders. I would tend to agree with that. The Douglas case is one. But, yes, we would contend that we are in the territory of clear error here. Quite clearly. And there's a few ways of looking at that. One is— I'm laughing only because you're using the same terms to define the same terms, which always makes me smile. So we know it when we see it? Is that what it comes down to? No, but I would point the court to a few factors. One is— It's really clear. Yes. It is crystal clear, we would say, Your Honor. And so—but what I would point the court to are a few things. One is looking at the order itself. It is—the order is notable for a few reasons. One is that it doesn't seem to set out the correct standards under either state's laws, assuming we intend to, you know, evaluate both of them here. In setting out the California standard, it cites— Aren't the two standards the same? They are, from our perspective. They're the same. They're the same. They're applied the same. They have the same purpose. So you're saying that the district court misunderstood the standard for applying equitable estoppel here? I think it set out the wrong standards in a lot of ways for both—under both states' laws. And then when it applied it, it appeared to have applied a very different standard. So I think that's why we're in clear error territory. Let me anticipate. I think you're going to say, well, the district court says it's enough for equitable estoppel that the claims be intertwined, but in fact, what you need for equitable estoppel is that the plaintiff needs to be taking advantage of what's in the contract. And if he's trying to take advantage of what's in the contract that provides arbitration, then there's equitable estoppel. But he's not trying to take advantage of what's in the contract. Is that the argument? That is the argument. And that is this Court's own words in the Murphy v. DirecTV case. And did you find even one case that if we applied California law, and that's really one of the issues, is whether or not New York law or California law, did you find a case that was even close on the facts here to what we have where the Court found equitable estoppel and then applied the arbitration provision against the non-signature to claim the arbitration provision? We did not, Your Honor. And we set out not only the quartet of Ninth Circuit opinions, but also numerous district court opinions that weren't addressed by the other side. And I'll also note the other side. Let's look at New York for a second. Sure. Let's go right to there, and I'm sorry to interrupt you. But in New York, give me the best case, and I think it's your Second Circuit case, that would, that comes close, if not the same, is applying the same doctrine. They have to be inextricably interrelated, and there has to be some benefit that the subscriber has to have gained from this contract with Verizon. Right. So the closest cases we found factually in New York are district court cases from the Southern District and Eastern District. And I would point the Court to the Butto versus, I'm sorry, the Butto case from the Eastern District of New York. And in that case, and I just want to read you a quick quote from it, the Court essentially held that a wireless provider's debt collector could not rely on the equitable estoppel doctrine, quote, even if the wireless providers expressly authorized the collection fees. And likewise, in Lucy v. Bay Area from the District of Connecticut, a debt collector, a wireless provider's debt collector could not rely on estoppel, where there is no corporate relationship or close affiliation between the debt collector and the wireless provider, no allegations of concerted conduct, the collector was not named in the agreement, and the Court had not been presented with any evidence. Okay. Now, give me the case that you have to distinguish in a New York law that counsel are relying on, because they definitely want New York law to apply, and it's their position that equitable estoppel does apply, applying New York law. Give me that, how you're going to distinguish that particular case. So I would point out two things. First of all, the most recent Second Circuit opinions on equitable estoppel are Sokol and Ross. Both of them turn out against the non-signatory in those cases on much closer to commercial disputes, allegations of collusion, coordinated misconduct, in both of those cases. In one case, Sokol, where the contract was going to be the star of the show in some ways, there were allegations that the non-signatory had interfered in the contractual relationship between the plaintiff and the signatory. Okay. Both of those are distinguishable. And then they do cite some district court cases, I think, also distinguishable, and we lay that out in the reply brief. Is there, are there any cases, of course, the Douglass case in Ninth Circuit is a good one, but are there any cases on this issue of equitable estoppel, and Douglass was not equitable estoppel, where the party invoking equitable estoppel that was not a signatory also attempted to import the waiver of class action and all the other components, which is, I understand that to be the case here, right, is that, is that Tern wishes to import also the argument that the, that class action has been waived here? I believe that would be their approach. I don't know that we, that the parties addressed that in the briefing below us. Isn't that kind of important, though? Indeed, it would be, Your Honor. To your client? Certainly. Certainly. To have never agreed with the defendant on anything, have no written agreement whatsoever, and yet be compelled into arbitration, lose the only procedural mechanism that we could potentially use on behalf of these clients, it would be more than a big deal, certainly, Your Honor. But I mean, let's assume that we cannot find that this is clearly erroneous as a matter of law. Do you anticipate that you're going to find that Tern is going to basically present your, your clients with the argument, you waived the, you waived, you, as, as a matter of equitable estoppel, not only have you waived the right to arbitration, but you have waived the right to a class action, and you have, and you are bound by every provision that sets forth the requirements for an arbitration. I think that's the natural conclusion, Your Honor. That would be the arbitration provision in the customer agreement under which we'd be proceeding an arbitration. I think that would be their argument. Although I, of course, I don't want to put words in their mouth. But I can rather anticipate that you might be right. So, Your Honors, what I, what I did want to make clear, though, is that we are in the territory of clear error here. There are quite literally four decisions from this court, from 2013 to present, one of which was issued after the district court's order here, all of which reject equitable estoppel under far more favorable facts. It's hard to distinguish any of them, and I'll, I'll run through them briefly and then reserve as much time as I can for rebuttal. But Murphy v. DirecTV really cannot be distinguished. Their, the equipment leased by the non-signatory, I'm sorry, equipment leased from the non-signatory Best Buy was integral to the DirecTV television service being obtained from the defendant, again, DirecTV. The contract there discussed equipment leases and plaintiffs even alleged collusive and inserted misconduct, joint misconduct against both the defendants, signatory and non-signatory, and yet no estoppel. Kramer v. Toyota Motor Corporation, same idea here. Toyota could not rely on an arbitration provision that its own dealers . . . We've read the cases. Let me ask you a different question, but it goes to what Judge Silver has been pursuing. And that is, the Bauman factors are, they're interactive, and one of them does require that the error be clear. Does it have to be clearer? Are there degrees of clarity depending on how catastrophic the consequences are for the person who's being subjected to arbitration? We would certainly contend that's true here. And I think part of the reason we can get to clearer error without much trouble here is that it's a, it's, this is being decided early in the case. This is not a summary, this is not a fact-specific or a fact-intensive inquiry. And, and one of the things the court notes when weighing these five factors together is that if there's no way to, to one day get this decision or get this order back in front of the court, we're going to face real trouble. And that's, that's an important factor. Let's get to that because that, this is an oddity in a way for me. Having been a district court judge for, for longer than, well, I don't mind admitting 23 years, I often dismiss these matters. You know, if, if I grant arbitration, deny arbitration, whatever, I dismiss it. I don't stay it. Even though the Federal Arbitration Act seems to require that they be stayed. I, I, that's why I thought this was a bit odd. I wasn't sure why, reading the opinion, why that occurred. But then I, I started thinking, well, maybe it doesn't make a difference because, and I, there's only one case I found in the Ninth Circuit, which is the Stanford case, that allows after arbitration, and after the decision, or the, the, the decision that it has to be arbitrated, then it's arbitrated, and in the circumstances were, or the facts were a little different there, but the, the, it was appealed to the Ninth Circuit, and the Ninth Circuit held that the issue of whether or not it should have been arbitrated in the first place could be reviewed de novo. As I see the difference here, though, as you've alleged and, and argued the Douglas case, the problem here is, is that if your clients win in arbitration, then as in the case you've made clear, then they lose the right, or may well lose the right, because their claims are moot, to be the representatives, right? Precisely. Okay. So that's part of your issue on whether or not there's any remedy here? If the, if the, in fact, the, the class action is, is imported into this whole thing. Right. I think that's exactly right, Your Honor. There'd be no way to get this issue before the Court again. So they can totally defeat you if this is the, just to follow along this, by rolling over in arbitration, in, in, as to the individual claim. Oh, yeah, that's right. Potentially. It'd be against our, you know, out of our hands. Yeah. Right. Why don't we hear from the other side, and then you've got two minutes. Good morning. May it please the Court. Michael Rubin for Real Party Interest, turn. The petition for writ amendamus should be denied. The district court did not clearly err. Did it err? No. The district court did not err at all, but that, of course, is not the standard. The standard, a third-bound factor required. Let's first talk about error. Sure. And then we can get to the question of clear error, if, if that turns out to be where we may end up. It strikes me that the district court did err, because as I read equitable estoppel in this context, in order for someone to be equitably estopped, and thereby prevented from objecting to arbitration, that person must have been seeking to take advantage of the contract. And once you take advantage of the contract, you're bound by the, all the terms in the contract. I don't see that the plaintiffs here have sought to take advantage of the contract. How have they sought to take advantage of the contract? The district court, first of all, found that they did. That their claim No, the district court really didn't talk about that. SCR, SCR 4, the district court found that the claims arose from the contract. And in fact, You're telling me that it arose from the contract. Correct. There's no question it did. And, in fact, they do. Here, here is how they hit. They arose from the contract, but equitable estoppel is different. It's that they have to gain something. There has to be something there. Otherwise, otherwise, following your scenario, then anyone who was an advertiser, any advertiser could make a claim, because they're also mentioned in the contract. They're a part of the contract. They're part of the privacy provisions. They could make the claim based upon equitable estoppel, based on your theory that arbitration is required, no class action, right? What's the difference? That's not at all our theory. That's not at all the theory. The theory is that under the test applied here, which looks at the relationship between the parties, Verizon and Tern, the issues raised, the contract and the issues raised, the intertwinement relates to the contract that contains the arbitration provision, which is the Verizon subscriber agreement. Okay. Let me stop you for a second, because I've spent a lot of time on this. This is tough for me and not for you guys, because you do this all the time. But I took – I spent a lot of time on this, on this privacy agreement, on the agreement itself. I couldn't find your client listed, really, either – certainly not specifically, because, of course, they didn't – Verizon didn't enter into a contract with Tern until much later. By the way, a totally independent contract, not an agent, made clear in that contract, no relationship, other than they're there for making money. And – but I'm looking at the provisions that, first, it summarized and then the subscriber is referred to the provisions in the privacy portion of the contract. And I'm reading it here, and I'll try to summarize what I have, but you may see third-party advertisements. Your client is – so third-party advertisements, is that your client? Your client is not an advertiser. My client is involved in the provision of third-party advertising. But they're not – but they're not – they're not an advertiser, so it says, on some Verizons, and we'll just say devices, some advertisements are chosen by companies that place advertisements on behalf of other third-party advertisers. What is that? Where's your client there? My client sits right there. In the same provision that Your Honor is reading from – Tell me, tell me. I'm going to read that again. Sure. Some advertisements are chosen by companies that place advertisements – companies that place advertisements, not your client – on behalf of other third-party advertisers. Is that your client? Yes. It is. How is it that a subscriber is to read that and understand that your client is somebody who is – has this process and a procedure in order to place a cookie – we'll set to determine whether or not – how they use what their advertising process is or their activity, advertising activity, what they like and dislike. How are they supposed to figure out that that's your client and that they are getting a benefit from it somehow? Let me see if I can answer your question this way. Okay. In – first of all, the question that Your Honor is asking was not raised in the district court or on appeal. The interpretation of the agreement, the application of the agreement, the fact that Petitioner has agreed to these agreements and they are incorporated is a settled question and it's admitted before the court. No, no. It's not admitted because – because what's admitted before the court? It was admitted – This was not raised on appeal, but let me proceed to answer your – let me proceed to answer your question. Yeah, but what difference does it make? Under the New York test for equitable estoppel, there is no rule that the party seeking to invoke equitable estoppel be named specifically in the agreement. No, I agree with that. They don't have to be named. But what I'm trying to do on the issue of the equities, I'm starting from the contract because I'm – you have to try to do – you have to determine whether or not it's equitable. First of all, to find your client or see within the aegis of your – of the agreement that your client exists there for the purpose of doing targeting, and then from there, whether or not the client could ever or the subscriber could ever understand what process and procedure your client was engaging in. And this is exactly the exercise that the district court went into. There was an undisputed record before the district court of evidence put before the district court that was unobjected to and unrebutted, and no evidence came in before the – from the plaintiffs. They didn't seek to depose anyone. They didn't seek to put any – any additional evidence in of their own. Okay. That's fine. And so the – But we have – we have your evidence on appeal. Correct. You have relied substantially on the contract, particularly on this – this provision. Right. Which is – which is a privacy provision. And those provisions, which are admittedly agreed – agreed upon, direct – direct specifically to the claims at issue. So the plaintiff's complaint raises two claims, a deception claim under New York law and a trespass to chattel's claims. As Your Honor has just noted, the plaintiffs claim that they didn't know who Turn was. The claim – the complaint doesn't identify a single statement by Turn. Turn didn't have any connection here until Verizon sought to deploy an advertising program using their own technology, this UIGH, that they independently developed. They reached out to Turn to help them leverage that technology to help issue advertising that was targeted to their subscribers. In connection with that, they vetted how it was done. They worked with Turn to get it done. They knew everything about how that was going to be done. In the process of delivering that advertising, it would not have worked had Verizon not, throughout the course of that agreement, delivered to Turn the UIGHs, these identifiers, along with the demographic information that Verizon had, to Turn so that Turn could help, as effectively a contractor for Verizon, fulfill that obligation that Verizon and its subscribers had entered into, this advertising function, where cookies were described, the fact that they would be placed and accessed. So every bit of the substantive claims that plaintiffs are alleging here, which are not abstract privacy claims, they are a deception claim and a trespass claim, the entire rubric for how those have to be analyzed come up in the context of the expectations set by their Verizon subscriber agreements. You know, you still haven't answered my question. I apologize. I got derailed a bit by Judge Silver. My question is, given the way the equitable doctrine, equitable swappable doctrine operates, in order to hold them to the arbitration provision of the contract, they must be suing to obtain some benefit from the contract. What benefit are they suing to obtain from the contract? They're seeking to enforce an alleged violation of their expectations under that contract. I don't think, I don't read their suit that way at all. I read their suit as saying that you have done something that you're not authorized to do by law and that they didn't sign up for it and there's nothing in the contract that provides them a quote benefit. You've done nothing to benefit them. You've done nothing but to harm them. Actually, I don't get where you, where you, where you can get that they're suing to get a benefit out of the contract. They're suing you outside the contract. Their claims can't exist but outside of the contract. They're, they're entirely. Well, they can't exist in the sense that but for the contract, you wouldn't be doing this because you've got a contract with Verizon. But that is not our argument, Your Honor. That is absolutely not our argument. And we would acknowledge that that's not enough. The test is that the claims must arise from the contract. No, the test is not merely that. That is the California test. The test in New York is actually a little bit looser, which relates to the issues. You're ignoring the thrust of my question, not arise from the contract. I understand that the contract produces some aspect of this dispute. The question is, what is the benefit that the plaintiffs are seeking to enforce by relying on the contract? Because you've got to show that. There's, the benefit is, they're, they're the reference point of their expectation interest. Neither of these two claims exist in the ether. A deception claim must have some tethering. It has some predicate. But they're not seeking benefit of the bargain. They're seeking a benefit, they're seeking redress for what you did that, that's not in the contract, one way or the other. It is, with respect, it is in the argument. They're not seeking because you didn't perform, they're seeking because you did something that's not in the contract, one way or the other. Well, with respect, it is in the contract. The contract specifically discloses that third-party advertising will occur, that cookies will be placed and accessed. Their, their dispute is with the way that, that access was done, the way those cookies were set, and that is specifically agreed as something that will occur in arbitration. And the district court had this record before him. No one else submitted evidence, and it is, it is not clear error for the district court to have reached that result. Well, let me ask you this as I, I asked opposing counsel, if, let's say, Starbucks was one of the advertisers, and one of the subscribers in the Starbucks advertiser subscribed or advertised through the Verizon device, and they actually, there was a cause of action concerning what they were doing, could they, with the scope of this agreement then, because basically they are advertisers, and they are advertisers that have been targeted and, and they have been sifted through by your client or others, would they be able to assert the provisions of this contract that would require arbitration? It's not in the record before the court, but hypothetically speaking, it doesn't sound like it based on the facts that have been alleged. The critical aspect here is looking at the relationship of the parties, the issues, and the, and the contracts. And here, the fact is, is that it is a Verizon program. Verizon used their technology. They worked intimately with Tern to develop this. This is not a circumstance where it's an individual advertiser seeking to place one ad. This was... You're claiming the benefits of a contract from simultaneously attempting to avoid the burden of the contract. Okay. What benefit are they getting from you? The benefit they are seeking is under the contract. I didn't say whether it's under the contract. I asked what is the benefit. But the test you just recited, Your Honor, it was, was a benefit under the contract. And that's why I'm asking what the benefit is, not what the contract is. Just tell me what the benefit is. The benefit of the contract is the ability to even assert the claim at this point. The expectation. And, but you're, you're, you, you, you, I find this frustrating because I'm trying to figure out what benefit you have conferred. Any on, on the plaintiff? Let me, let me see if I can answer it this way. The benefit that they're, that they received under the contract was the Verizon service. And that service included the advertising that, that came with that service. They agreed to that. They agreed. But do you see, but do you see, I don't think that, here's the point and you're trying to  Not at all. It's not, it's not a benefit at all. They hate it. But that is the. They don't want it. If you, if you agree, if you sign, if you, if you sign an agreement that says I'm going to receive internet service in a certain way and that certain way includes advertising and the placement of cookies. Let me talk. Please. Then you can talk. Please. Please. If I sign a contract that says you can do the following things and I'll do the following things and I pay money, well, to the extent that the other side of the contract is doing things that benefit them, I've agreed to it, but that doesn't make it a benefit to me. So yes, they've entered into a contract that Verizon gets to do certain things, but that doesn't mean that everything that Verizon does benefits them. What they get is cell phone service. And what Verizon gets is the ability to do all kinds of advertising. So getting the advertisement is a benefit to Verizon. It's not a benefit to them. It comes under the contract, but it's not a benefit to them. Now do I finally make myself clear? I understand the line of inquiry, Your Honor. I think it's. I think. So again, what's the benefit that they're suing to enforce? Because I read what's happening here is you're doing something that they claim is not a benefit. They don't want it. Your Honor, if they brought a claim directly against Verizon about the advertising that Verizon provides, if everything about this case were the same except for Verizon that did this. Well, then they're stuck because they signed a contract with Verizon. But we're talking equitable estoppel, which has different requirements. In our view, under the state law of California or of New York, which governs this, that requirement is not one that take us outside the contract. And it was certainly not clear error for the district court to reach that. You see, again, take it outside the contract. They keep asking about benefits. I don't know if this helps or not. And I'm not sure I agree with Judge Fletcher on this benefits analysis. But let's substitute Verizon for Tern and assume that the case was only against Verizon. Wouldn't the answer be the same? There's no benefit that they're seeking under Judge Fletcher's view of the doctrine as it applies here. But in that case, Verizon clearly would be entitled to invoke the arbitration clause as the basis for resolving whatever the dispute here is that the plaintiffs are bringing. Your Honor, it's precisely the point I was trying to make a moment ago. And I believe the response from Judge Fletcher was that there is some distinction between what can be done against the party to the contract and what a third party can take advantage of in the equitable estoppel analysis. Of course. And that's Blackwood's law. And I believe in this context, that's not the way the test works. But if my hypothetical is correct, that you would have to enforce the arbitration provision if Verizon were the named party, the benefit analysis doesn't really work here because the subscriber is still bringing a claim that arises from the subscriber agreement. If I understand the benefit, if there is one, it is we were trying to improve the Verizon experience in using the Internet by collecting data of site visits in order to supply the subscriber with a better array of targeted advertising that the subscriber might be interested in that would appeal to the subscriber. That would be one way to cast it. But if the test were otherwise, if a petitioner were always able to walk in and recast something that would be a benefit that they would be obligated to arbitrate under the contract with the signatory, but recast it as something that they don't like, I don't like advertising or I don't like whatever it may be, that's an argument that they can always use to excuse themselves out of equitable estoppel under that test. And in this circumstance, they signed contracts that under an issue that was never raised before the district court and the validity of which was never challenged, it's been accepted for the case. And I think at this point, this particular argument is not one that can amount to reversible error under the clear error standard. You know, I'm taking a risk here, but I think we all agree that with respect to Verizon, the benefits that are clear in the contract with Verizon, they would be stuck. And they were stuck. And I understand they originally sued Verizon and then they dropped the suit and then they brought it only against your client. However, the tenuousness of your client's relationship to this contract is where I have a problem. There were benefits in this. I agree with Judge Tallman. There's benefits is that they get targeted. Everybody knows they're going to get advertisements, but they get targeted advertisements. That's what's clearly explained or as clearly as possible, if you can understand their language, in the agreement. But they didn't get a benefit from a zombie cookie. And that arrangement between Verizon and Tern was completely independent in contrast to the other cases that I've looked at. I mean, it is so independent that they spend an enormous amount of time in their agreement to make sure we don't have anything to do with you. We're doing something for you. This is what you want. And Verizon was under no circumstances, at least as far as the record that we've seen, aware that they had engaged in this process or this method of creating a zombie cookie. In fact, as I understand it from the record, and perhaps it's disputed, this was discovered by some student at Stanford. Well, if I can respond to the very last point you've raised. The undisputed record before the district court is that Verizon was aware of all of this. Zombie cookie is an attractive term, but it's a rhetorical effort to make something sound scary that was just a technical reflection of Verizon's own technology. Verizon developed a unique identifier header that was in their own network traffic that they disclosed that the plaintiffs don't take issue with. Their complaint doesn't take issue with it. They then engaged a third party to help them develop an advertising program for that. Cookies were a part of that. Cookies are a part of internet advertising. That the cookie was reset in the same number was just a reflection of the fact that the network traffic identifier was the same at each time. There's nothing negative or frightening about that, and it was nothing bad. And I'll point you to the SER 373 to 376. It's expressly disclosed in evidence before the district court that he had the opportunity to weigh and evaluate that Verizon had awareness of how this was integrated. Okay. Any further questions from the bench? Thank you. Thank you. Thank you, Your Honors. Just a few brief points on rebuttal. One on clear error. Where the district court recites an incomplete and outdated standard, goes on to apply the wrong standard and relies on a arises out of standard versus what the courts have repeatedly stated in this circuit and others. I think we're in the clear error territory. Why isn't Verizon here? Why did you drop Verizon as the party defendant? So I want to be. Besides the obvious answer. No. Why'd they drop it? Yeah, I do too. But I want to be clear about that. One of our co-counsel had represented different plaintiffs in a different court and had brought a different suite of claims, more federal statutory claims than anything else against both entities. Leif Cabreza, our firm, had never sued Verizon for anything. And I think the complaint makes clear why we're focused on Tern. Verizon itself disavowed what Tern did when news of this broke, when Stanford researchers had to uncover it. So I think we have good reason here to focus only on Tern. They are the wrongdoer from our perspective. And they are also not signatories to their contract. It provides for arbitration. Well, the other thing I'll note, I'll just carry off of that for just one moment, Your Honor, and I think you made this point already. Obviously, the analysis is different between Verizon and Tern. When there's an agreement to arbitrate, there's an agreement to arbitrate. We appreciate that. When there's no agreement to arbitrate, now we're into a very different territory. We're forcing people to arbitrate against their will unless they, as Your Honor said. As non-signatories, and then you can make them arbitrate if the Doctrine of Equitable Estoppel applies. So the question is, does it apply? And it does not. It's a narrowly confined doctrine. We don't believe it to apply here. Unless the panel has any questions, nothing further from me, Your Honor. Okay. Both sides for their arguments. Thank you. The case of Henson v. District Court for the Northern District is now submitted for decision. And that completes our argument for this morning. Thank you. We're all concerned.
judges: W. Fletcher, Tallman, Silver